# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **POWELL VALLEY NATIONAL BANK, ET AL.,** | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 2:12CV00018 |
| v. | ) ) ) | **OPINION AND ORDER** |
| **PENSION BENEFIT GUARANTY CORPORATION,** | ) ) ) ) | By: James P. Jones United States District Judge |
| Defendant. | ) | |

*Al Holifield, Holifield & Associates, PLLC, Knoxville, Tennessee, and John E. Jessee, Jessee & Read, P.C., Abingdon, Virginia, for Plaintiff; Sara B. Eagle, Assistant Chief Counsel, and Damarr M. Butler, Attorney, Office of the Chief Counsel, Pension Benefit Guaranty Corporation, Washington, D.C., for Defendant.*

In this action contesting a ruling of the Pension Benefit Guaranty Corporation determining that a pension plan had failed to distribute sufficient benefits to its participants in connection with its termination, I find that the ruling was not arbitrary or capricious and must be upheld.

I

Powell Valley National Bank ("Powell Valley"), and Powell Valley National Bank Defined Benefit Pension Plan and Trust (the "Plan") (collectively, "Plaintiffs"), have filed a joint Complaint against the Pension Benefit Guaranty

Corporation ("PBGC"), a government-owned corporation responsible for the administration and enforcement of Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.A. §§ 1301-1461 (West 2009 & Supp. 2013). Plaintiffs seek to overturn a determination by PBGC that the Plan must distribute additional benefits to its participants in connection with its termination.

PBGC filed a Counterclaim seeking enforcement of its determination. The parties have now submitted cross motions for summary judgment which have been fully briefed and argued and are ripe for decision. Jurisdiction of the court exists pursuant to 29 U.S.C.A. § 1303(e), (f). Because the Plan is administered in this judicial district, venue is proper here. *Id.* § 1303(e)(2), (f)(2)(B).

The basic facts are not in dispute. Powell Valley is a commercial bank headquartered in Jonesville, Virginia, within this judicial district. The Plan is a defined benefit pension plan funded by employer contributions from Powell Valley, which is the Plan's sponsor and administrator.

In late 2008 Powell Valley made the decision to terminate the Plan effective January 31, 2009, in contemplation of adopting a 401(k) plan for its employees as a replacement. A proposed Amendment for Terminating Defined Benefit Plan (the "Termination Amendment") was prepared in connection with the termination, but was not adopted at that time by the Plan. Between November 24 and 25, 2008, Powell Valley sent Notices of Intent to Terminate to Plan participants, notifying

them, as it was required to do, of a January 31, 2009, termination date. On February 2, 2009, Powell Valley submitted the Plan to the Internal Revenue Service for a determination of its tax qualification upon termination and the IRS issued a favorable determination letter on September 24, 2009. Thereafter, between October 7 and 9, 2009, 62 participants received lump sum termination distribution payments from the Plan, totaling $3,877,241.27.[1] On October 20, 2009, the Plan adopted the Termination Amendment.

In 2010 PBGC conducted a random audit of the Plan's termination. (AR 16.) On August 24, 2011, PBGC issued its initial determination based upon that audit, directing that the distributions be recalculated and additional benefits paid. (AR 424-25.) Powell Valley requested reconsideration of the determination (AR 414-22) but upon such review, the initial determination was upheld by PBGC on January 9, 2012 (AR 432-35). This action followed.[2]

---

[1] There are 65 participants, but three participants each requested an annuity rather than a lump sum distribution. The gross amount of individual lump sum distributions ranged from a high of $434,858.67 to a low of $980.58. (Administrative Record ("AR") 34.) The three annuities cost $458,625. (*Id.*)

[2] Following the final determination by PBGC, Powell Valley submitted another request for reconsideration, which was refused by PBGC on the ground that all administrative remedies had been exhausted with its final determination. Earlier in this case, Powell Valley sought to supplement the administrative record with documents submitted to the PBGC with this request for reconsideration, which motion was denied by the magistrate judge. (Order, Jan. 28, 2013, ECF No. 32.) Powell Valley did not seek review of the magistrate judge's order, but in any event I do not find that the supplemental documents make any difference to my decision in this case.

II

The parties agree that there is a highly deferential standard of my review of PBGC's administrative decision in this case. The court is permitted to set aside the agency's action only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C.A. § 706(2)(A) (West 2007). The scope of review is thus "narrow" and I may not merely "substitute [my own] judgment for that of the agency." *Ancient Coin Collectors Guild v. U.S. Customs & Border Prot., Dep't of Homeland Sec.*, 698 F.3d 171, 184 (4th Cir. 2012) (internal quotation marks and citation omitted).

PBGC determined that the Plan underpaid its participants because the lump sum termination benefits were calculated in accordance with the amendment formally adopted by the Plan only after the termination date. *See* 29 U.S.C.A. § 1341(b)(1)(D) ("A single-employer plan may terminate under a standard termination only . . . when the final distribution of assets occurs, the plan is sufficient for benefit liabilities (determined as of the termination date)."); 29 C.F.R. § 4041.8(a) (2012) ("A participant's or beneficiary's plan benefits are determined under the plan's provisions in effect on the plan's termination date . . .

.").[3] The termination date is the date proposed in the Notice of Intent to Terminate that is sent to each affected party. 29 U.S.C.A. § 1348(a)(1).

Plaintiffs do not dispute that under PBGC's ruling, additional benefits would be payable.[4] Further, they do not dispute that the Plan was terminated prior to the formal adoption of the Termination Amendment. Instead, Plaintiffs argue that Powell Valley, as the Plan administrator, reasonably interpreted the Plan to permit the calculation of benefits as paid.

The dispute arises in this case because of a change in the statutory law as to calculation of present value, a necessary calculation in the payment of lump sum benefits in a pension plan termination. When pension plan assets are being distributed in a standard termination by lump sum payments to participants, the present value of future plan benefits must first be calculated. 29 C.F.R. § 4041.28(c)(2)(i) (2012). Prior to its amendment by the Termination Amendment adopted after termination, the Plan provided for the calculation of the lump sum payment as follows:

> Notwithstanding any contrary provisions of the Plan . . . , for purposes of calculating minimum lump sum distributions from the Plan, the

---

[3] The regulation permits consideration of post-termination plan amendments that do not decrease the plan benefits. 29 C.F.R. § 4041(a)(1) (2012).

[4] The record does not reflect the total amount of such additional benefits due under PBGC's ruling. At oral argument, counsel for PBGC stated that it would be "roughly $200,000." In response, counsel for Plaintiffs said that the amount would be "substantially larger" and that the appropriate calculations were "still moving."

> mortality table shall be the applicable mortality table under Code § 417(e)(3)(A)(ii)(I) (which is presently GAM 1983) and the interest rate shall be the applicable interest rate under Code § 417(e)(3)(A)(ii)(II) for the second month immediately before the beginning of the Plan Year (November preceding January 1) which includes the date of the distribution.

(Plan § 1.02, AR-40.)[5] Prior to 2008, the referenced Code subsections provided as follows:

> **(3) Determination of present value.**
>
> **(A) In general.--**
>
> **(i) Present value.**--Except as provided in subparagraph (B), for purposes of paragraphs (1) and (2), the present value shall not be less than the present value calculated by using the applicable mortality table and the applicable interest rate.
>
> **(ii) Definitions.**--For purposes of clause (i--
>
> **(I) Applicable mortality table.**--The term "applicable mortality table" means the table prescribed by the Secretary. Such table shall be based on the prevailing commissioners' standard table (described in section 807(d)(5)(A)) used to determine reserves for group annuity contracts issued on the date as of which present value is being determined (without regard to any other subparagraph of section 807(d)(5)).
>
> **(II) Applicable interest rate.**--The term "applicable interest rate" means the annual rate of

---

[5] The "Code" references are to the Internal Revenue Code. (Plan § 1.07, AR-40.) "GAM 1983" refers to the Group Annuity Mortality Table adopted by the National Association of Insurance Commissioners in 1983. *See* 14 Va. Admin. Code § 5-50-20 (2013).

> interest on 30-year Treasury securities for the month before the date of distribution or such other time as the Secretary may by regulations prescribe.

26 U.S.C.A. § 417(e)(3) (West 2011) (historical and statutory notes).[6]

A statutory change occurred. The Pension Protection Act of 2006 ("PPA"), Pub. L. No. 109-280, § 302, 120 Stat. 780, 920, amended § 417(e)(3). It provided as follows for plan years beginning after December 31, 2007:

> **(3) Determination of present value--**
>
> **(A) In general.**--For purposes of paragraphs (1) and (2), the present value shall not be less than the present value calculated by using the applicable mortality table and the applicable interest rate.
>
> **(B) Applicable mortality table.**--For purposes of subparagraph (A), the term "applicable mortality table" means a mortality table, modified as appropriate by the Secretary, based on the mortality table specified for the plan year under subparagraph (A) of section 430(h)(3) (without regard to subparagraph (C) or (D) of such section).
>
> **(C) Applicable interest rate.**--For purposes of subparagraph (A), the term "applicable interest rate" means the adjusted first, second, and third segment rates applied under rules similar to the rules of section 430(h)(2)(C) (determined by not taking into account any adjustment under clause (iv) thereof) for the month before the date of the distribution or such other time as the Secretary may by regulations prescribe.

---

[6] As referenced in § 417(e)(3)(ii)(I), Code § 807(d)(5)(A) provides that the "prevailing commissioners' standard tables" means the most recent tables prescribed by the National Association of Insurance Commissioners. 26 U.S.C.A. § 807(d)(5)(A) (West 2011).

26 U.S.C.A. § 417(e)(3) (West Supp. 2013).  Section 430(h)(3) provides that the Secretary of the Treasury shall by regulation prescribe mortality tables to be used in determining any present value.  26 U.S.C.A. § 430(h)(3)(A) (West Supp. 2013).  Section 430(h)(2)(C) provides for the use of average monthly yields on investment grade corporate bonds with varying maturities.  26 U.S.C.A. § 430(h)(2)(C), (D) (West Supp. 2013).

The Termination Amendment changed the method of calculating present value, in order to reflect the change in the law.  It provided as follows:

> 10.2 **Applicable interest rate.**  For purposes of the Plan's provisions relating to the calculation of the present value of a benefit payment that is subject to Code Section 417(e), any provision prescribing the use of the annual rate of interest on 30-year U. S. Treasury securities shall be implemented by instead using the rate of interest determined by applicable interest rate described by Code Section 417(e) after its amendment by PPA.
>
> . . . .
>
> 10.3 **Applicable mortality assumption.**  For purposes of the Plan's provisions relating to the calculation of the present value of a benefit payment that is subject to Code Section 417(e), any provision directly or indirectly prescribing the use of the mortality table described in Revenue Ruling 2001-62 shall be amended to prescribe the use of the mortality table described in Revenue Ruling 2007-67.

(Termination Amendment §§ 10.2, 10.3, AR-97.)[7]

---

[7] Revenue Ruling 2007-67 relates to the use of the PPA mortality table for plan distributions during plan years after December 31, 2007.  Rev. Rul. 2007-67, 2007-48 I.R.B. 1047.

In summary, effective after December 31, 2007, there was a statutory change in the minimum legal requirement for lump sum distribution calculations. In determining present value, pension plans must use mortality tables prescribed by the Secretary of the Treasury rather than that devised by the National Association of Insurance Commissioners. In addition, the interest rate used in the calculation must be based on the average yields of corporate bonds rather than the 30-year government bond rate.[8]  As the parties are agreed, the use of the pre-2008 minimum values produces a greater benefit for Plan participants.[9]

PBGC argues that because on the date of termination, the Plan had not been amended to add the new statutory references, Plaintiffs were obligated to calculate the lump sum benefits on the basis of the Plan's existing language, which adopted the former statutory minimum methods of calculation. While PBGC concedes, of course, that those statutes were no longer in force after 2007, it points out the statutes only imposed minimum benefits and that there was no prohibition against

---

[8] The former interest rate and the former mortality table are referred to by the parties as the "GATT Interest Rate" and the "GATT Mortality Table," respectively, because they were provided for in the Uruguay Round of the General Agreement on Tariffs and Trade ("GATT"), an international agreement regulating trade. *See* Uruguay Round Agreements Act, Pub.L. No. 103-465, § 767, 108 Stat. 4809, 5039-40 (1994).

[9] The larger the interest (discount) rate used in a present value calculation, the smaller the lump sum. *See Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 537 n.21 (1983). As PBGC points out in its brief, "because of the power of compounding and the long-term nature of pension liabilities, a slight change in the interest rate can have a significant impact on the amount of a lump sum." (PBGC's Mem. in Supp. of Summ. J. 8.)

calculating participants' benefits in such a way that they received greater lump sums than required by law.

Plaintiffs dispute that the Plan was required to formally adopt the Termination Agreement in order to distribute the lump sum benefits under the new method. They contend that because the unamended Plan prescribed a method expressly based on statutes that were no longer in force, it was within the discretion of the Plan administrator to interpret the Plan to provide for a termination distribution using the new statutory method. The legislative changes to § 417(e), according to Plaintiffs, "created an ambiguity in the Plan language which the Plan administrator had complete discretion to interpret." (Pls.' Reply 12.) Because the Plan administrator so interpreted the Plan to require the new statutory minimum actuarial assumptions, it is argued, the post-termination Plan amendment did not unlawfully decrease Plan benefits. Under this view, the post-termination execution of the Plan amendment was "simply an administrative formality" because the Plan "for all intents and purposes" had already been "amended" through the administrator's interpretation. (Pls.' Mem. in Supp. of Cross-Mot. for Summ. J. 17.)

While it is certainly true that plan administrators have the discretion to interpret plan provision, *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989), that discretion is abused if it results in an interpretation contrary to the

plain language of the plan, *Lockhart v. United Mine Workers 1974 Pension Trust*, 5 F.3d 74, 78 (4th Cir. 1993). I find that the relevant language of the Plan at the time of termination was not ambiguous and required the administrator to follow its direction. While the statutory sections referred to in the plan had been amended by the PPA at the time of termination, it was of course possible for the distributions to be calculated in accord with the actuarial assumptions set forth in the unamended statute.

For these reasons, I cannot find that PBGC's decision was arbitrary or capricious, an abuse of discretion, or otherwise illegal and thus Plaintiffs are not entitled to relief.

### III

Accordingly, it is **ORDERED** that the Motion for Summary Judgment by PBGC (11) is GRANTED and the Motion for Summary Judgment by Plaintiffs (ECF No. 21) is DENIED. A separate final judgment will be entered forthwith.

ENTER: September 4, 2013

/s/ James P. Jones
United States District Judge